## FIDELITY NAT. BANK & TRUST CO. OF KANSAS CITY v. ENRIGHT, State Bank Com'r.

(District Court, W. D. Missouri, W. D.    March 26, 1920.)

No. 225.

Banks and banking ⬤➡233—Rights lawfully conferred on national bank cannot be impaired by state.

Where a national bank has been authorized by the Federal Reserve Board under the power conferred by Act Dec. 23, 1913, § 11, subd. (k), as amended by Act Sept. 26, 1918, § 2 (Comp. St. Ann. Supp. 1919, § 9794), and not in contravention of the laws of the state, to act as trustee and in other fiduciary capacities, and its name as a bank and trust company has been approved by the Comptroller, its right to use the name and to exercise such functions cannot be impaired by any action of the state or its officers.

In Equity.    Suit by the Fidelity National Bank & Trust Company of Kansas City against C. F. Enright, Bank Commissioner of the State of Missouri.    On motion to strike answer.    Sustained, and injunction granted.

Frederick W. Lehmann, of St. Louis, Mo., and J. G. L. Harvey and Justin D. Bowersock, both of Kansas City, Mo., for complainant.

Frank W. McAllister, Atty. Gen., and John T. Gose, Asst. Atty. Gen., of the State of Missouri, for respondent.

VAN VALKENBURGH, District Judge.    The complainant, under the name of Fidelity Trust Company, was formerly a trust company organized under the laws of the state of Missouri as such.    Later it reorganized as a national banking corporation, clothed by the Federal Reserve Board with the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other capacity in which state banks, trust companies, or other corporations, which come into competition with national banks, are permitted to act under the laws of the state of Missouri.    In such capacity it took the name of "Fidelity National Bank & Trust Company of Kansas City, Missouri," which name was duly approved by the Comptroller of the Currency, as provided by law.    The respondent, in his official capacity, has taken the position that in the discharge of its functions as a trust company, under the name assumed, complainant is acting in violation of the laws of the state of Missouri, particularly of section 167 of article 3, of the title "Banks, Trust Companies, Savings Banks and Safe Deposit Institutions" (Session Acts 1915, p. 190), which provides as follows:

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*"Prohibition against Encroachments upon Powers of Trust Companies.*— No person, association, firm or corporation, other than a corporation authorized by the laws of this state to do the business of a trust company and subject to the supervision of the bank commissioner as provided by such laws, shall make use of the word or words 'trust' or 'trust company' as part of any artificial or corporate name or title, nor make use of any sign at the place where his or its business is transacted, having thereon such words or any other word or words indicating that such place or office is the place or office of a trust company, nor make use of or circulate any written or printed, or partly written or partly printed matter whatever having thereon any such words or any other word or words indicating that the business conducted is that of a trust company, nor transact business in such way or manner as to lead the public to believe, or as in the opinion of the bank commissioner might lead the public to believe, that his or its business is that of a trust company."

Respondent concedes that if complainant has been granted the power to act as trust company by the Federal Reserve Board, and if the Federal Reserve Board had power and authority to confer such powers and authority upon complainant, that complainant has the right to exercise such powers as it claims to be exercising. It is conceded in the brief that complainant can use either the name "bank" or the name "trust company"; but it is asserted it cannot use both, although such use is authorized by the statutes of the United States, and has been approved and sanctioned by the Comptroller of the Currency, and, further, that it is illegal for complainant to advertise in any manner to the public that it is engaged in the exercise of the trust powers vested in it by act of Congress and the grant of the Federal Reserve Board, and that complainant, because of its use of such name, and of its advertising, as aforesaid, is transacting business in the state unlawfully and without warrant or authority.

Accordingly it is alleged in the bill, and not controverted in the answer, that the respondent bank commissioner has notified certain state banks and trust companies, making reports to him, that he cannot approve the complainant as a depository of their reserves or any part thereof, and has refused to approve their reports showing the deposit of reserves in the complainant; that he has threatened, and still threatens, to give like notices to other banks and trust companies so reporting to him, and that he will, unless enjoined therefrom, continue to give such notices; that he withholds his approval of the complainant as such depository of reserves in the case of various banks and trust companies, who are willing and desire to designate the complainant as a depository, and unless enjoined therefrom will continue to withhold such approval. Complainant avers that such action of respondent is without warrant in law, and in derogation of the rights of complainant, vested in it by act of Congress and the grant of the Federal Reserve Board, and therefore constitutes a discrimination against complainant, and is greatly to the injury of complainant in the conduct of its business as a national banking association.

It is apparent that said section 167 of the State Banking Act was intended to prevent all persons, associations, firms, or corporations from making use of the word or words "trust" or "trust companies" as a part of their title, unless authorized by the laws of the state to do the business of a trust company, and subject to the supervision of the

bank commissioner, as provided by such laws. The complainant was a corporation authorized by the laws of the state in this behalf, and remains so authorized, unless its reorganization as a national banking corporation has deprived it of this privilege. The federal act (40 Statutes at Large, part 1, p. 969 [Comp. St. Ann. Supp. 1919, § 9794]) expressly subjects national banks exercising such trust powers to state supervision and inspection with respect to trust transactions:

"National banks exercising any or all of the powers enumerated in this subsection shall segregate all assets held in any fiduciary capacity from the general assets of the bank and shall keep a separate set of books and records showing in proper detail all transactions engaged in under authority of this subsection. Such books and records shall be open to inspection by the state authorities to the same extent as the books and records of corporations organized under state law which exercise fiduciary powers, but nothing in this act shall be construed as authorizing the state authorities to examine the books, records, and assets of the national bank which are not held in trust under authority of this subsection."

It seems to be the policy of the state officers, as disclosed by the answer, that Missouri corporations shall not be permitted to assume the name of "Bank & Trust Company." The authority for this prohibition seems difficult to deduce from the sections cited. Section 102 of the Banking Act (Laws of Missouri 1915, p. 152) provides that no person, except a national bank, a federal reserve bank, a private banker, or a corporation duly authorized by the commissioner to transact a banking business in this state, shall make use of any office sign at the place where such business is transacted indicating that such place or office is the place or office of a bank, nor otherwise indicate that such business is the business of a bank. Section 167, as we have seen, prohibits the use of the word or words "trust" or "trust company," unless by a person or organization authorized to do the business of a trust company. No good reason is perceived why any one authorized to do both kinds of business may not use both names. But, however this may be, it is beyond debate that the Federal Reserve Board, by valid legislation, under a valid act of Congress, has clothed complainant with power to act in this same fiduciary capacity—

"in which state banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the state in which the national bank is located."

This was the obvious purpose of the grant, to promote the efficiency of these agencies of the federal government to discharge the duties, for the performance of which they were created, and to relieve them from the disadvantage of competition with state institutions under less favorable conditions. True, it is provided that the permit shall be granted only "when not in contravention of state or local laws." But in the same section it is declared that—

"Whenever the laws of such state authorize or permit the exercise of any or all of the foregoing powers by state banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of state or local law within the meaning of this act."

It can no longer be questioned that—

"National banks are instrumentalities of the federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties for the performance of which they were created." Davis v. Elmira Sav. Bank, 161 U. S. 283, 16 Sup. Ct. 503, 40 L. Ed. 700.

When the government of the United States enters any field over which Congress is given express, or necessarily implied, jurisdiction, it appropriates that field to the fullest extent necessary to insure the complete and effective exercise of its sovereignty. The name of a national bank must be approved by the Comptroller of the Currency. It can be changed, or its use interfered with, by no other authority. We have here, then, a national bank, empowered by the laws of the United States to act in a fiduciary capacity, and bearing a name confirmed by national authority. Clearly, any act on the part of the state which impairs, hampers, embarrasses, restricts, or, in effect, wholly prevents, the discharge of its functions as a national banking institution with the incidental powers enumerated, must be void, because in express conflict with the paramount laws of the United States.

But, in my opinion, this discussion is, in large measure, academic, because the decision of the Supreme Court of the United States in First National Bank v. Fellows, 244 U. S. 416, 37 Sup. Ct. 734, 61 L. Ed. 1233, L. R. A. 1918C, 283, Ann. Cas. 1918D, 1169, is determinative of the question here before us. The power of Congress and the validity of the action of the Federal Reserve Board is expressly upheld. The court, citing McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, and Osborn v. Bank, 9 Wheat, 738, 6 L. Ed. 204, declared:

That "the implied power of Congress to confer a particular function upon a national bank is to be tested, not by the nature of the function viewed by itself, but by its relations to all the functions and attributes of the bank considered as an entity"; that "the circumstance that a function is of a class subject to state regulation does not prevent Congress from authorizing a national bank to exercise it, nor would it lie with the state power to forbid this"; that "a business not inherently such that Congress may empower national banks to engage in it may nevertheless become appropriate to their functions if, by state law, state banking corporations, trust companies, or other rivals of national banks are permitted to carry it on"; that "the section authorizes the specified functions to be exercised by national banks when the right to perform them is given by state law, or is deducible therefrom through being so conferred on state banks or corporations whose business in some degree rivals that of national banks; and it gives administrative power to the Reserve Board as a means of co-ordinating such functions, in their exercise by national banks, with the reasonable and nondiscriminating provisions of state law regulating their exercise as to state corporations."

The language and reasoning of that opinion so completely answers the contentions of the respondent in the case at bar that further elaboration is unnecessary. It surely cannot be contended that if valid authority is granted to a national banking corporation to exercise certain functions, under a name which no state agency is entitled to

question, the enjoyment of the legitimate powers thus conferred can be indirectly limited or destroyed in the manner alleged in this bill. That such would be the necessary effect of the action of the bank commissioner cannot be doubted.

It follows, then, that the motion to strike must be sustained and such injunctive relief granted as will protect complainant in the exercise of the national powers conferred upon it.